UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM H. HARRELL, JR. ET AL.,

               Plaintiffs,

v.                           Case No.  3:08-cv-15-J-33TEM

THE FLORIDA BAR, ET AL.,

               Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to The Florida Bar Defendants' Motion to Abstain or in the Alternative to Strike (Doc. # 12) and The Florida Bar Defendants' Motion to Dismiss Complaint as to Plaintiff Public Citizen, Inc. (Doc. # 13), both filed on January 28, 2008.  Plaintiffs filed a response in opposition to both of the aforementioned motions on February 14, 2008 (Doc. # 15).

For the reasons that follow, both motions are due to be denied.

**I.**   **Background**

On January 7, 2008, William Harrell, Jr., Harrell & Harrell, P.A., and Public Citizen, Inc. (collectively "Plaintiffs") filed suit against the Florida Bar and various employees of the Florida Bar (collectively "Defendants").  Plaintiffs' complaint, filed under 42 U.S.C. § 1983, seeks declaratory and injunctive relief (Doc. # 1).  Essentially, Plaintiffs contend that several provisions of the Florida Rules of Professional Conduct concerning

attorney advertising comprise an unconstitutional restriction on commercial speech in violation of the First and Fourteenth Amendments of the United States Constitution.

Specifically, Plaintiffs challenge the following rules:

(a) Florida Rule of Professional Conduct § 4-7.1, to the extent it requires advertisements to provide only "useful, factual information presented in a nonsensational manner;"

(b) Florida Rule of Professional Conduct § 4-7.2(c)(1)(D), to the extent it classifies a truthful statement as "misleading" because the statement would also be true for many other lawyers;

(c) Florida Rule of Professional Conduct § 4-7.2(c)(1)(D), to the extent the rule prohibits statements that are "unsubstantiated in fact" but that are unquantifiable, statements of opinion, or otherwise not false or misleading;

(d) Florida Rule of Professional Conduct § 4-7.2(c)(1)(G), which prohibits statements that "promise results," to the extent the rule prohibits statements that are unquantifiable, statements of opinion, or otherwise not false or misleading;

(e) Florida Rule of Professional Conduct § 4-7.2(c)(1)(I), which prohibits any communications that "compares the lawyer's services with other lawyer's services," to the extent the rule prohibits statements that are unquantifiable, statements of opinion, or otherwise not false or misleading;

(f) Florida Rule of Professional Conduct § 4-7.2(c)(2), which prohibits statements "describing or characterizing the quality of the lawyer's services," to the extent the rule prohibits statements that are unquantifiable, statements of opinion, or otherwise not false or misleading;

(g) Florida Rule of Professional Conduct § 4-7.2(c)(3), which prohibits "visual and verbal descriptions, depictions, illustrations, or portrayals of persons, things, or events" that are "manipulative, or likely to confuse the viewer," to the extent the rule prohibits statements that are not false or misleading; and § 4-7.5(b)(1)(A), to the extent it also prohibits such statements;

(h)  Florida  Rule  of  Professional  Conduct  §  4-7.5(b)(1)(C), which prohibits the use of "any background sound other than instrumental music;"
(i) Florida Rule of Professional Conduct § 4-7.7(a)(1), which imposes a prior restraint on attorney advertising.

(Doc. # 1 at 17).

The  complaint  alleges,  among  other  things,  that  on  May  10, 2002,  Plaintiff  William  Harrell[1]  submitted  for  review  by  the Florida Bar a transcript of a proposed advertisement that included the statement "Don't settle for anything less." (Doc. # 1 at ¶ 23). On May 17, 2002, the Bar rejected the statement because it could "create  unjustified  expectations  about  results  the  lawyer  can achieve;"  however,  the  Bar  supplied  Harrell  with  an  approved replacement  statement  "Don't  settle  for  less  than  you  deserve." (Doc. # 1 at ¶ 23).  Since 2002, Harrell has consistently used the statement  "Don't  settle  for  less  than  you  deserve"  in  television, radio,  billboard,  print,  and  internet  advertisements.  (Doc. # 1 at ¶ 25).  According to Harrell, the statement "Don't settle for less than  you  deserve"  has  acquired  significant  public  recognition. (Doc. # 1 at ¶ 25).

In  2006,  Harrell  began  developing  an  updated  advertising campaign utilizing the statement "Don't settle for less than you deserve."  (Doc. # 1 at ¶ 26).  Harrell submitted the updated advertising campaign to the Bar on September 10, 2007.  (Doc. # 1

---

[1] Plaintiff William Harrell is the majority shareholder and managing partner of the law firm Harrell & Harrell, P.A.

at ¶ 27).[2]   On September 21, 2007, the Bar informed Harrell that the updated advertising campaign did not comply with Florida Rule of Professional Conduct 4-7.2(c)(2) because the statement "Don't settle for less than you deserve" improperly "characterizes the quality of the services being offered."   (Doc. # 1 at ¶ 28). Harrell responded by sending a letter to the Bar which explained that the statement "Don't settle for less than you deserve" is the statement that the Bar suggested in 2002, and that the statement has been in use since that time in firm advertisements.   (Doc. # 1 at ¶ 29).   On October 4, 2007, the Bar reaffirmed its decision that the statement violated the rules regarding attorney advertisement and warned Harrell that running advertisements containing the statement "Don't settle for less than you deserve" could subject Harrell to discipline.   (Doc. # 1 at ¶ 29).   On October 10, 2007, Harrell requested that the Bar reconsider its determination, and that request was denied.   (Doc. # 1 at ¶ 30). On November 28, 2007, the Bar "advised Harrell to revise the advertisements and warned [Harrell] that running them could subject him to discipline."   (Doc. # 1 at ¶ 31).

---

[2]   The complaint indicates, "Harrell believed that his campaign . . . was permissible under the rules because the Bar had previously approved the phrase.   However, pursuant to the prior-restraint provision of Rule 4-7.7, Harrell was nevertheless required to submit his new advertisements for pre-approval."   (Doc. # 1 at ¶ 27).

After this correspondence with the Bar, Harrell found himself between Scylla and Charybdis:

> Harrell & Harrell found itself confronted with an insoluble dilemma. Even if it reverted to its previously approved advertising campaign in an effort to comply with the Bar's decision, it would still run afoul of the Bar's new position that the [statement: Don't settle for less than you deserve] is prohibited. The firm had already invested a substantial amount of time and money in designing and implementing its new campaign, and it would have been extremely expensive for the firm to design another campaign without the prohibited phrase. Moreover, the phrase [Don't settle for less than you deserve] had developed a significant amount of public recognition, and the firm could not stop using it without suffering a substantial loss of name recognition, goodwill, and, consequently, loss of client business. Nor could the firm pull its ads entirely without facing almost certain bankruptcy, since it depends on daily advertising to bring in potential new clients.

(Doc. # 1 at ¶ 32).

Harrell asserts that his firm "continues to run its new advertising campaign on television and on its website and therefore faces an imminent risk of discipline by the Bar." (Doc. # 1 at ¶ 33). Harrell further asserts that "even if Harrell were to remove the phrase 'Don't settle for less than you deserve,' the Bar will use other aspects of the ads as the basis for disciplinary action." (Doc. # 1 at ¶ 35).

Plaintiff Public Citizen, a non-profit public interest organization, on the other hand, challenges the rules in question on behalf of its members:

> The rules' burdensome prohibition on speech unconstitutionally restrict a wide range of useful and informative advertising by plaintiffs and by other

> lawyers and law firms that has no potential to confuse or
> deceive consumers.   The rules therefore injure Florida
> consumers, including Florida members of plaintiff Public
> Citizen, by preventing them from receiving truthful, non-
> misleading information about legal services and legal
> rights.

(Doc. # 1 at ¶ 36).

Defendants filed an answer to the complaint on January 28, 2008 (Doc. # 11) in which Defendants assert various affirmative defenses, request that this Court utilize the Pullman abstention doctrine, and also contend that Plaintiff Public Citizen lacks standing to bring this action.[3]

Plaintiffs filed a motion for a preliminary injunction on January 17, 2008 (Doc. # 5).   Defendants have yet to file a response to Plaintiffs' motion for a preliminary injunction; however, Defendants filed a motion requesting that this Court strike paragraph 35 from the complaint and employ the Pullman

---

[3] The Pullman abstention doctrine originates from the case of Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 469 (1941), in which the Court held:

> [T]he federal courts, exercising a wise discretion,
> restrain their authority because of scrupulous regard for
> the state governments and for the smooth working of the
> federal judiciary. . . .  This use of equitable powers is
> a contribution of the courts in furthering the harmonious
> relation between state and federal authority without the
> need of rigorous congressional restriction of those
> powers. . . . In the absence of any showing that these
> obvious methods for securing a definitive ruling in the
> state courts cannot be pursued with full protection of
> the constitutional claim, the district court should
> exercise its wide discretion by staying its hands.

Id. at 501.

abstention doctrine with respect to other aspects of the complaint (the "Abstention Motion") (Doc. # 12).  In addition, Defendants filed a motion seeking the dismissal of Plaintiff Public Citizen on the basis of standing (the "Motion to Dismiss") (Doc. # 13). Plaintiffs filed a response in opposition to the Abstention Motion and the Motion to Dismiss on February 15, 2008 (Doc. # 15).  The Court denies the Abstention Motion and the Motion to Dismiss for the reasons that follow.

## II.  **Public Citizen**

As stated in Plaintiffs' complaint, "Public Citizen, Inc. is a nonprofit public interest organization with approximately 90,000 members nationwide, including nearly 5,000 in Florida." (Doc. # 1 at ¶ 5).  Further, Public Citizen Litigation Group (PCLG), a division of Public Citizen founded in 1972, "has litigated for the public interest in cases concerning consumer rights, health and safety regulation, access to the civil justice system, freedom of speech, and other topics." (Doc. # 1 at ¶ 5).

With respect to Public Citizen, the complaint alleges, among other things, that:

> The rules' burdensome prohibitions on speech unconstitutionally restrict a wide range of useful and informative advertising by plaintiffs and by other lawyers and law firms that has no potential to confuse or deceive consumers.  The rules therefore injure Florida consumers, including Florida members of plaintiff Public Citizen, by preventing them from receiving truthful, non-misleading information about legal services and legal rights.

(Doc. # 1 at ¶ 36).

Defendants contend in the Motion to Dismiss that Public Citizen lacks standing to participate in this action, and Defendants request that this Court dismiss the portion of the complaint containing allegations related to Public Citizen. Defendants argue that the complaint fails to include facts supporting associational standing for Public Citizen. Specifically, Defendants contend: "when an organization fails to allege facts demonstrating with particularity that any of its members have suffered an actual or threatened injury, the organization has no standing." (Doc. # 13 at 4-5).

Plaintiffs, on the other hand, submit that the complaint establishes Public Citizen's associational standing, especially under the lenient approach to standing traditionally employed in First Amendment cases.

## A.   Associational Standing

The standards applicable to associational standing are well known.   In <u>Warth v. Seldin</u>, 422 U.S. 490 (1975), the Court pronounced:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . .   The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . .   So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party

indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

422 U.S. at 511.

The Warth Court further noted:

Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

Id. at 515.

Drawing principally from Warth, the Court enunciated a three part test for associational standing in the oft cited case of Hunt v. Washington State Apple Advertising, 432 U.S. 333 (1977): "An association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 343.

The Eleventh Circuit has recognized that the Hunt requirements are the "sole" requirements for associational standing and that an association is not required to "name the members on whose behalf

suit is brought." <u>Doe v. Stincer</u>, 175 F.3d 879, 882 (11th Cir. 1999).

Defendants refer to <u>Doe</u> as well as other Eleventh Circuit cases in challenging Public Citizen's standing. In <u>Doe</u>, as in the present case, the associational standing of an advocacy organization was challenged under the first prong of <u>Hunt</u>. Among other things, the defendant in <u>Doe</u> asserted that the advocacy organization lacked standing because the complaint failed to identify or describe the circumstances of a member of the organization who was threatened or injured by the defendant's conduct. <u>Id.</u> at 884. The Eleventh Circuit rejected this argument, noting, "It is enough for the representative entity to allege that one of its members or constituents has suffered an injury that would allow it to bring suit in its own right." <u>Id.</u> at 884-885 (internal citations omitted). The court further explained, "The requisite for representational standing is not necessarily an explicit statement of representation but a close nexus between the organization and its members and an allegation of injury to its members as a result of the action." <u>Id.</u>

In <u>Doe</u>, the Eleventh Circuit ultimately determined that the advocacy organization lacked standing; however, this ruling was not based on a pleading defect by the advocacy organization. Rather, in <u>Doe</u>, the court determined that, at the summary judgment phase, the advocacy organization failed to support its complaint

allegations with adequate evidence.  Id. 886-887.  Drawing from
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), the court
remarked, "[The] elements of standing must be supported in the same
way as any other matter on which the plaintiff bears the burden of
proof, i.e. with the manner and degree of evidence required at
successive stages of the litigation." Doe, 175 F.3d at 887.  As the
advocacy organization in Doe "relied solely" on a single, deficient
affidavit at the summary judgment phase, the Eleventh Circuit
approved the district court's entry of summary judgment against the
advocacy organization.  Id. In its closing remarks, the Eleventh
Circuit indicated, "The Advocacy Center may well be able to
establish its standing to sue in this case.  On this record,
however, it has not done so." Id. at 888.

Similarly, Defendants' arguments based on the case of National
Alliance for the Mentally Ill v. Board of County Commissioners of
St. John's County, 376 F.3d 1292 (11th Cir. 2004), outlining an
association's evidentiary burdens at the summary judgment phase,
are unavailing.  In National Alliance, the court remarked that the
association in question "failed to show that any of their members
had standing to sue" at the summary judgment phase, and commented
that the association could have better utilized information about
specific mentally ill individuals residing in the county furnished
by the board during discovery.  Id. at 1296.  The court explained:
"the Board provided [the association] with information pertaining

to persons who were eligible for treatment when it tendered discovery materials . . . [The association] could have used those materials to ascertain the identities of injured constituents. They did not do so." Id. at 1296.   The court found that the association's failure to "identify an injured constituent prevents them from asserting associational standing." Id.

The cases mentioned by Defendants, addressing an association's burden at the summary judgment phase, are not helpful at this stage of the proceedings.   Instead, this Court draws from Virginia State Board of Pharmacy v. Virginia Citizens Consumer Counsel, Inc., 425 U.S. 748 (1976), and other First Amendment cases.   In Virginia Citizens, a Virginia statute prohibited pharmacists from advertising prescription drug prices, justifying such prohibition on the goal of promoting professionalism among pharmacists. Id. at 749.   In Virginia Citizens, the Supreme Court struck down the state law and recognized the right to freedom of commercial speech under the First Amendment for the first time. Id. at 770.   Interestingly, the plaintiffs were not pharmacists, but instead were comprised of an actual consumer of prescription medicine and two non-profit associations. Id. at 753.   The Court found that the non-profit organizations had standing to challenge the statute, and the Court determined that the statute was unconstitutional, holding: "If there is a right to advertise, there is a reciprocal right to receive the advertising[.]" Id. at 757.

In reaching this ruling, the Court discussed its prior opinions concerning commercial speech, such as <u>Lamont v. Postmaster General</u>, 381 U.S. 301 (1965), where the Court recognized the First Amendment right to receive political publications, <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 762 (1972), where the Court recognized a First Amendment right to "receive information and ideas," and <u>Procunier v. Martinez</u>, 416 U.S. 396, 408 (1974), where the Court addressed the practice of redacting letters from prisoners and focused on the First Amendment rights of both the prisoners and their correspondents to whom the letters were addressed. In addition, the Court discussed the symbiotic relationship between commercial speech and capitalism:

> Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price. So long as we preserve a predominately free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of information is indispensable.

<u>Virginia Citizens</u>, 425 U.S. at 765.

The <u>Virginia Citizens</u> Court wisely noted that the specific issue of attorney advertisement was left for another day.[4] Since

---

[4] The Court indicated, "We stress that we have considered in this case the regulation of commercial advertisement by pharmacists. Although we express no opinion as to other professions, the distinctions, historical and functional, between professions, may require consideration of quite different factors.
(continued...)

<u>Virginia Citizen</u>, the Court has decided a number of cases addressing attorney advertisement.   In <u>Shapero v. Kentucky Bar Association</u>, 486 U.S. 466 (1988), the Court specifically recognized attorney advertisement as protected by the First Amendment: "Lawyer advertising is in the category of constitutionally protected commercial speech." <u>Id.</u> at 483.   In <u>Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio</u>, 471 U.S. 626 (1985), the Court addressed restrictions on attorney advertising and held that "restrictions involving commercial speech that is not itself deceptive [must] be narrowly crafted to serve the State's purpose" and that "the States may not place an absolute prohibition on certain types of potentially misleading information if the information also may be presented in a way that is not deceptive." <u>Id.</u> at 644.   Thereafter, in <u>Peel v. Attorney Registration and Disciplinary Commission</u>, 496 U.S. 91, 110 (1990), the Court ruled: "A State may not . . . completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations . . . . Information about certification and specialties facilitates the consumer's access to

---

⁴(...continued)
Physicians and lawyers, for example, do not dispense standardized products; they render professional services of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception if they were to undertake certain kinds of advertising." <u>Virginia Citizens</u>, 425 U.S. at 773.

legal services and thus better serves the administration of justice."

In this case, Defendants limit their arguments concerning Public Citizen's standing to the proposition that the complaint fails to allege a concrete and particularized injury in fact to the members of Public Citizen. The complaint alleges that "the rules . . . injure Florida consumers, including Florida members of plaintiff Public Citizen, by preventing them from receiving truthful, non-misleading information about legal services and legal rights." (Doc. # 1 at ¶ 36). As the Supreme Court has recognized that attorneys have the right to advertise and has found a reciprocal right in the public to receive information contained within advertisements, Plaintiff Public Citizen has alleged an injury sufficient to satisfy <u>Lujan</u>.

In addition, Public Citizen meets the requirements of <u>Hunt</u>. 432 U.S. 333. Public Citizen's complaint allegations demonstrate (a) that its members would have standing to sue in their own right as they have a right to receive information contained within advertisements; (b) the interests Public Citizen seeks to protect in this case are germane to the organization's stated purpose: protection of consumer rights, access to the civil justice system, and freedom of speech (Doc. # 1 at ¶ 5); and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Public Citizen has standing to

challenge the attorney advertising rules which are questioned in this case.[5]

## III. **Pullman Abstention**

Abstention is a "threshold question" for the Court, which must be addressed prior to reaching the merits of the claims.  <u>Tenet v. Doe</u>, 544 U.S. 1, 6 (2005).  The Eleventh Circuit has discussed the <u>Pullman</u> abstention doctrine as follows:

> Under the <u>Pullman</u> abstention doctrine, a federal court will defer to state court resolution of underlying issues of state law.  Two elements must be met for <u>Pullman</u> abstention to apply: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional state functions, tentative decisions on questions of state law, and premature constitutional adjudication.  Because abstention is discretionary, it is only appropriate when the question of state law can be fairly interpreted to avoid adjudication of the constitutional question. . . . In considering abstention, we must take into account the nature of the controversy and the importance of the right allegedly impaired.

<u>Siegel v. LePore</u>, 234 F.3d 1163, 1174 (2000).

---

[5] Facing similar arguments against standing as to Public Citizen in a cases challenging attorney advertising rules, the court in <u>Alexander v. Cahill</u>, 5:07-cv-117, 2007 U.S. Dist. LEXIS 29823, at * 3 (N.D. N.Y. April 23, 2007) found that Public Citizen did have standing to protest the New York rules regarding attorney advertising.  In <u>Alexander</u>, it appears that the debate centered on the issue of whether attorney advertising was germane to Public Citizen's purpose.  The court determined: "The Court finds that this lawsuit is germane to Public Citizen's asserted mission because it implicates the right of consumers to receive commercial speech." <u>Id.</u>  Similarly, in <u>Schwartz v. Welch</u>, 890 F. Supp. 565 (S.D. Miss. 1995), the court found that Public Citizen had standing to challenge certain attorney advertisement rules in Mississippi. <u>Id.</u> at 569.

The United States Supreme Court has remarked that, "[a]bstention is, of course, the exception and not the rule." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976), and that "[t]he abstention doctrine is not an axiomatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." <u>Baggett v. Bullitt</u>, 377 U.S. 360, 375 (1964).

In <u>Baggett</u>, University of Washington faculty, staff, and students challenged two state statutes which required the taking of oaths, one statute specifically applied to teachers, and the other applied to all state employees, including teachers. <u>Id.</u> at 361. Administration of the statutory oaths was a condition of employment for teachers and all other state employees. <u>Id.</u> The oath applicable to teachers required teachers to swear "by precept and example" to "promote respect for the flag and the institutions of the United States of America and the State of Washington, reverence for law and order and undivided allegiance to the government of the United States." <u>Id.</u> at 361-362. The oath applicable to all state employees contained the requirement that the affiant swear that he or she is not a "subversive person." <u>Id.</u>

The district court found the statute applicable to all state employees to be constitutional and, utilizing abstention, declined to rule on the statute applicable only to teachers. <u>Id.</u> at 365.

The Supreme Court reversed the district court's rule as to both statutes. Id. at 367.   The Supreme Court determined that both of the statutes violated the United States Constitution: "A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." Id.   In addition, the Court spurned the district court's use of abstention:

> Other considerations also militate against abstention here.   Construction of this oath in the state court, abstractly and without reference to concrete, particularized situations so necessary to bring into focus the impact of the terms on constitutionally protected rights of speech and association, would not only hold little hope of eliminating the issue of vagueness but would also very likely pose other constitutional issues for decision, a result not serving the abstention-justifying end of avoiding constitutional adjudication.

Id. at 378.

The Baggett Court also remarked that use of abstention resulted in "piecemeal" litigation and delayed adjudication "for an undue length of time, a result quite costly where the vagueness of a state statute may inhibit the exercise of First Amendment freedoms." Id. at 378-379.

Baggett is not a lone decision.   A number of Supreme Court and Eleventh Circuit cases have held that abstention, and particularly the Pullman abstention doctrine, is inappropriate when First Amendment rights are at stake.

The case of <u>Zwickler v. Koota</u>, 389 U.S. 241 (1967), also provides valuable precedent regarding the danger of abstention in the context of First Amendment cases.  Zwickler was convicted in state court for distributing anonymous political handbills, as Section 781-b of the New York Penal Law criminalized distribution of anonymous handbills. <u>Id.</u> at 242.  Zwickler's conviction was reversed on state law grounds, and the reversal of his conviction was affirmed by the New York Court of Appeals. <u>Id.</u> at 243.  Thereafter, Zwickler filed a complaint in federal court seeking a declaration that the aforementioned New York Penal Law criminalizing the distribution of anonymous handbills was repugnant to the guarantees of the First Amendment.  <u>Id.</u> at 244.  The district court utilized the doctrine of abstention and dismissed the complaint, "remitting [Zwickler] to the New York courts to assert his constitutional challenge in defense of any criminal prosecution for any future violations of the statute or, short of this, the institution of an action in state court for a declaratory judgment." <u>Id.</u> at 245 (internal citations omitted).

The Supreme Court determined that the district court's utilization of abstention was improper, noting:

> Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it.  Any other course would impose expense and a long delay upon the litigants without hope of its bearing fruit.

Id. at 251 (internal citation omitted).   The Court further
explained:

> In thus expanding federal judicial power, Congress
> imposed the duty on all levels of the federal judiciary
> to give due respect to a suitor's choice of a federal
> forum for the hearing and decision of his federal
> constitutional claims.  Plainly, escape from that duty is
> not permissible merely because state courts also have the
> solemn responsibility, equally with the federal courts to
> guard, enforce, and protect every right guaranteed or
> secured by the Constitution of the United States.  We yet
> like to believe that wherever the Federal courts sit,
> human rights under the Federal Constitution are always a
> proper subject for adjudication, and that we have not the
> right to decline the exercise of that jurisdiction simply
> because the rights asserted may be adjudicated in some
> other forum.   The judge-made doctrine of abstention,
> first fashioned in Pullman, sanctions such escape only in
> narrowly limited special circumstances.

Id. at 250; see also Cate v. Oldham, 707 F.2d 1176, 1184 (11th Cir.

1983)(declining to invoke Pullman abstention even after determining

that the Pullman factors were present, and holding that abstention

"is to be invoked particularly sparingly in actions involving

alleged violations of First Amendment rights"); Pittman v. Cole,

267 F.3d 1269, 1285 (11th Cir. 2001)(holding that a district court

abused its discretion when it employed abstention and noting

"[a]bstention should not be used as a lever to force the state

courts to do the federal courts' work.  Such would thwart the

plaintiff's choice of the alternative federal forum, specifically

provided by Congress")(internal citations omitted).

Against this backdrop, the Court considers Defendants'
contention that this Court should apply the abstention doctrine in
this First Amendment case.

## IV.   Parties' Arguments

As noted, Plaintiffs' complaint attacks numerous provisions
contained within the Florida Rules of Professional Conduct.
Defendants request that this Court apply the Pullman abstention
doctrine to two components of Plaintiffs' complaint: Plaintiffs'
challenge to Florida Rule of Professional Conduct § 4-7.5(b)(1)(C)
and Plaintiffs' allegations in complaint paragraph 35 (hereafter
"Paragraph 35").[6]

### A.   Florida Rule of Professional Conduct § 4-7.5(b)(1)(C)

Defendants assert that abstention would be appropriate as to
Plaintiffs' attack on Florida Rule of Professional Conduct § 4-
7.5(b)(1)(C) (which prohibits the use of any background sound in
attorney advertisements other than instrumental music) because an
amendment to this Rule is "currently under consideration" (Doc. #
12 at 1).  Specifically, Defendants assert:

> Pursuant to the proposed amendment, Rule 4-7.5(b)(1)(C)
> pertaining to background noises would be deleted in its
> entirety from Rule 4-7.5.  The Committee has proposed
> that Rule 4-7.2 be amended to add Rule 4-7.2(c)(16):
> Prohibited sounds.  A lawyer shall not include in any
> advertisement or unsolicited written communication any
> sound that is deceptive, misleading, manipulative, or
> that is likely to confuse the listener.

---

[6]  Plaintiffs' complaint is not organized into counts.

(Doc. # 12 at 4).

In response, Plaintiffs contend: "That the Bar is <u>considering</u> amending this rule, however, does not mean that the case presents an unsettled question of state law that would justify abstention under <u>Pullman</u>.  The Bar provides no authority for the proposition that a federal court should abstain in a First Amendment case to give a state the opportunity to amend an unconstitutional statute." (Doc. # 15 at 13).  Furthermore, Plaintiffs rely upon <u>ACLU v. The Florida Bar</u>, 999 F.2d 1486 (11th Cir. 1993), in which the court stated, "the Supreme Court has held that a case or controversy remains after a defendant voluntarily ceases allegedly improper behavior but is free to resume it at any time." <u>Id.</u> at 1495.

The "capable of repetition yet evading review doctrine" described in <u>ACLU v. The Florida Bar</u> is related to the arguments presented regarding abstention and justiciability in this case. Here, Plaintiffs contest Rule § 4-7.5(b)(1)(C), and Defendants assert that they <u>may</u> delete Rule § 4-7.5(b)(1)(C) in its entirety. However, Defendants <u>may</u> replace the challenged rule with a rule equally offensive to Plaintiffs.[7]  In addition, Defendants <u>may</u>

---

[7]    As noted, Defendants are considering the following replacement to rule 4-7.5(b)(1)(C): "<u>Prohibited sounds</u>. A lawyer shall not include in any advertisement or unsolicited written communication any sound that is deceptive, misleading, manipulative, or that is likely to confuse the listener."  As Plaintiffs have challenged similar rules which bar "misleading" information in advertisements, it seems that Plaintiffs would likely challenge the constitutionality of the proposed rule on
(continued...)

decide to leave the challenged rule unchanged, <u>may</u> change the rule and then revert back to the prior rule, or <u>may</u> engage in any pattern of decision that they find to be suitable at any time.[8]

This Court is duty-bound to address properly raised constitutional issues, and Defendants' non-committal remark that the Bar may alter a challenged rule does not relieve this Court of its duties. Furthermore, applying the abstention doctrine to some parts of Plaintiffs' complaint and not others, as requested by Defendants, would lead to "piecemeal" litigation, a harm recognized and discouraged by the Supreme Court in <u>Baggett v. Bullitt</u>, 377 U.S. 360, 378-79 (1964).

Accordingly, this Court declines to apply the abstention doctrine with regard to Plaintiffs' challenge of Florida Rule of Professional Conduct § 4-7.5(b)(1)(C).

**B.  Paragraph 35**

In sharp contrast to Defendants' precise arguments concerning Florida Rule of Professional Conduct § 4-7.5(b)(1)(C), Defendants' arguments concerning Plaintiffs' challenge of the attorney

---

[7](...continued)
prohibited sounds with the same vigor as Plaintiffs challenge the current version of the rule regarding background sounds.

[8]  Plaintiffs note that "the Bar informed Harrell last week that it had once again changed its position and now maintains that the phrase ["Don't settle for less than you deserve"] does *not* characterize quality of services [in violation of Florida Rule of Professional Conduct § 4-7.2(c)(2)].

advertising rules as asserted in Paragraph 35 are less clear-cut.[9]
Defendants assert, on one hand, that Plaintiffs' contentions in
Paragraph 35 are subject to the <u>Pullman</u> abstention doctrine because
Plaintiffs' allegations present an "unsettled question of state
law." (Doc. # 12 at 9).  On the other hand, Defendants suggest that
Plaintiffs' allegations in Paragraph 35 are subject to being

---

[9]   Paragraph 35 of Plaintiffs' complaint follows:

Moreover, plaintiffs have a reasonable fear that, even if
Harrell were to remove the phrase "Don't settle for less
than you deserve," the Bar will use other aspects of the
ads as the basis for disciplinary action.
   (a)   The firm's ads contain stock advertising
elements such as lighting effects, fades, moving text and
images, slogans, upbeat music, and a faint whooshing
sound that plays as text moves across the screen.
Although all these effects are subdued when compared to
other sorts of advertisements that routinely run on
television, the Bar could nevertheless seek to restrict
them under the rules prohibiting background noises and
requiring advertisements to contain "only useful, factual
information."
   (b)   Some of the advertisements contain statements
that the Bar, because of the breadth and vague nature of
the rules, would likely characterize as promises of
success ("we can help"); calls for legal services ("don't
give up"); characterizations of quality of legal services
("you need strong representation"); appeals to emotion
("it is wrong that loved ones in nursing homes are
neglected"); unsubstantiated or "manipulative statements,
as the Bar broadly defines these words ("we help accident
victims fight for justice every day"; or statements that
are common to most or all lawyers in Florida ("one goal:
justice for all our clients").  All these statements are
true or, at most, subjective and unquantifiable
statements of opinion, and are not misleading to
consumers.  Nevertheless, plaintiffs have a reasonable
fear that the Bar will take disciplinary action against
the ads under these broad and vague provisions.

(Doc. # 1 at ¶ 35).

stricken because they are not ripe, do not amount to a present case or controversy, or are otherwise nonjusticiable.  The Court will address these arguments in turn.

### 1.   **Unsettled State Law and Abstention**

Defendants request that this Court utilize the <u>Pullman</u> abstention doctrine with respect to Paragraph 35 and argue that "there is no indication in the Complaint that the Bar has ever found that the aspects of Plaintiffs' advertisements set forth in paragraph 35 are in violation of the Rules, or that the Bar has otherwise interpreted or applied, or threatened to interpret and apply, the Rules to these aspects of Plaintiffs' advertisement." (Doc. # 12 at 8).

From this contention, Defendants draw an analogy to <u>American Institute of Foot Medicine v. New Jersey State Board of Medical Examiners</u>, 807 F. Supp. 1170 (D. N.J. 1992), in which the court utilized <u>Pullman</u> abstention rather than deciding the constitutionality of a New Jersey Administrative Regulation promulgated by the New Jersey State Board of Medical Examiners (the "Board") regarding "Board Certification" for physicians. Specifically, in <u>American Institute of Foot Medicine</u>, the Board enacted a regulation requiring physicians advertising "Board Certification in a speciality" to possess certification by a "certifying agency." <u>Id.</u> at 1170.  Pursuant to the Regulation, the Board was responsible for maintaining a list of "certifying

agencies." <u>Id.</u> at 1171.   Prior to the enactment of the new regulation, plaintiffs American Institute of Foot Medicine members were able to advertise as "Board Certified" specialists. <u>Id.</u> However, the American Institute of Foot Medicine was not included in the list of "certifying agencies" recognized by the Board. <u>Id.</u> The American Institute of Foot Medicine applied to the Board to be included in the approved list of "certifying agencies," and the application was denied. <u>Id.</u>   A federal suit challenging the regulation's constitutionality followed.

Relying on <u>Pullman</u>, the district court abstained. <u>Id.</u> at 1172. Among other factors, the court gave significant weight to the fact that the state of New Jersey had not yet "interpreted or addressed" the new regulation. <u>Id.</u>   Furthermore, the court noted that the state of New Jersey was never presented with the opportunity to define key words in the regulation "namely, what is a 'specialty' and how one becomes 'recognized by' the Board." <u>Id.</u>

As argued by Plaintiffs, the court's analysis in <u>American Institute of Foot Medicine</u>, evaluating a new regulation, is inapposite to the present case.  The Florida Supreme Court has had many opportunities to interpret and apply its attorney advertising rules.[10]   Unlike the plaintiffs in <u>American Institute of Foot</u>

---

[10] <u>See, e.g.</u>, <u>Florida Bar v. Pape</u>, 918 So. 2d 240, 241 (Fla. 2005) ("In this case we impose discipline on two attorneys for their use of television advertising devices that violate the Rules of Professional Conduct.")

<u>Medicine</u> who challenged a regulation in the wake of its promulgation, the present Plaintiffs are not the first to take exception to Defendants' attorney advertising rules.

Even if Plaintiffs were the first to challenge the rules in question, this Court would likely decline to utilize abstention pursuant to the Supreme Court's guidance in <u>Houston v. Hill</u>:

> We have held that abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression. In such cases to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might effect the impermissible chilling of the very constitutional right he seeks to protect.

482 U.S. 451, 467-468 (1987).

The Court further noted, "Even if this case did not involve a facial challenge under the First Amendment, we would find abstention inappropriate." <u>Id.</u> at 468. Furthermore, the Court explained, "[E]ven if the statute has never been interpreted by a state tribunal[,] it is the duty of the federal court to exercise its properly invoked jurisdiction." <u>Id.</u> (internal citations omitted).

Consistent with the principles articulated in <u>Houston</u>, Plaintiffs assert that "the presumption against abstaining in the First Amendment context is amplified here because abstention would have the perverse effect of forcing Harrell to submit his ads for

review in the very system of prior restraint that he is challenging." (Doc. # 15 at 5).[11]

Accordingly, this Court declines to employ the <u>Pullman</u> abstention doctrine as to Paragraph 35.

### 2. <u>Standing</u>

In addition to requesting that this Court abstain from adjudicating the allegations of Paragraph 35, Defendants request that this Court strike the questioned paragraph. Although cast broadly, Defendants' core justiciability argument is that Harrell and his law firm do not have standing to bring the Paragraph 35 allegations.[12]

Defendants cite <u>Wilson v. State Bar of Georgia</u>, 132 F.3d 1422, 1428 (11th Cir. 1998), among other cases, which discuss standing in First Amendment cases. Notably, in <u>Wilson</u>, the court held, "In the [First Amendment] realm, plaintiffs do not have to expose themselves to enforcement in order to challenge a law." <u>Id.</u> The court further explained, "Rather, an actual injury can exist when the plaintiff is chilled from exercising her right to free

---

[11] This Court also agrees with Plaintiffs' argument that: "[I]t is strange for the Bar to urge abstention here because, unlike a typical defendant, the Bar is itself responsible for determining whether or not Harrell's ads comply with the challenged rules. Nothing prevents the Bar from making that determination and articulating its position in this Court rather than in a separate proceeding." (Doc. # 15 at 14)

[12] As noted in section II of this Order, Defendants have challenged Plaintiff Public Citizen's standing to participate in this action in a separate motion, which this Court denies.

expression or forgoes expression in order to avoid enforcement
consequences.  In such an instance, which is what is alleged here,
the injury is self-censorship." <u>Id.</u> at 1428 (internal citations
omitted).  In contrast to this case in its present, nascent state,
the <u>Wilson</u> court addressed standing at the summary judgment stage:
"When a plaintiff brings a pre-enforcement challenge to a
sanctioning statute, regulation, or ordinance, standing exists <u>at
the summary judgment stage</u> when the plaintiff has submitted
evidence indicating an intention to engage in a course of conduct
arguably affected with a constitutional interest, but proscribed by
a statute, and there exists a credible threat of prosecution." <u>Id.</u>
(Emphasis added, internal citations and original emphasis omitted).

This case, pending for just over one month, is clearly not at
the summary judgment stage.  At this point, Plaintiffs' standing to
challenge the aforementioned rules on the basis of the First
Amendment is better described in <u>Jacobs v. The Florida Bar</u>, 50 F.3d
901 (11th Cir. 1995).  In <u>Jacobs</u>, as in the present case, a law
firm challenged certain attorney advertisement rules and sought
declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to
vindicate First Amendment rights.[13]  The district court found that

---

[13] Specifically, the law firm in <u>Jacobs</u> challenged "(1) the
testimonial rule, prohibiting testimonials in advertising; (2) the
dramitization rule, prohibiting dramitizations in advertising; (3)
the single voice rule, mandating that in television and radio, only
one voice be used, with no background sound other than instrumental
music and that the voice not be one of a recognizable celebrity;
(continued...)

the law firm lacked standing to challenge the constitutionality of the attorney advertising rules and granted summary judgment in favor of the Florida Bar.  The Eleventh Circuit, however, reversed the district court's determinations.  After a thorough discussion, the court held that the law firm did have standing:

> To establish standing, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct.  A plaintiff stating that he intends to engage in a specific course of conduct arguably affected with a constitutional interest, does not have to expose himself to enforcement to be able to challenge the law. Rather, a plaintiff has standing if he demonstrates a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.  This showing may be accomplished by an allegation that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution.

Id. at 904 (internal citations omitted).[14]

In finding that the law firm had standing to challenge the attorney advertising rules, the Jacobs court placed great weight on "The Florida Bar's admission that Appellants face potential disciplinary action should they use the advertisements that they wish to use." Id. at 905.

Plaintiffs in the present case allege that Defendants threatened disciplinary action with respect to the use of the

---

[13](...continued)
and (4) the illustration rule." Id. at 902.

[14] The Jacobs court also found that the Florida Bar, "the party seeking to uphold a restriction on commercial speech[,] carries the burden of justifying [the restriction]." Id. at 906.

phrase "Don't settle for less than you deserve." (Doc. # 1 at ¶¶ 29, 31).  In addition, Plaintiffs allege that, even if the phrase "Don't settle for less than you deserve" were removed from the advertisements, Harrell would still fear disciplinary action. (Doc. # 1 at ¶ 35).  Despite Defendants' suggestions to the contrary, this Court is satisfied that Plaintiffs have alleged a concrete and particularized injury sufficient to satisfy the requirements of <u>Lujan</u> and <u>Jacobs</u>.[15]  Paragraph 35 describes Harrell's present conundrum: Harrell runs the advertising campaign containing the statement "Don't settle for less than you deserve" on television and internet ads, despite the Bar's warning that Harrell could be disciplined for doing so.  However, Harrell has been chilled from running the ads on billboards and other forms of media because he is uncertain of his rights and whether he will be disciplined for doing so.  In addition, due to the Bar's prior interactions with him, including approving the statement "Don't settle for less than

_____

[15] Defendants assert: "As a point of clarification, The Florida Bar's Ethics and Advertising Department is a wholly separate and distinct branch from The Florida Bar's disciplinary arm.  The opinions of Bar staff and the Standing Committee do not necessarily implicate the disciplinary authority of the Florida Bar.  The disapproval of an advertisement in and of itself does not invoke the Bar's disciplinary procedures.  Rather, a supervening act must take place, such as a publication of the disapproved advertisement, and a complaint regarding the act must be received by the Bar's disciplinary arm.  Given that the Bar's disciplinary arm is complaint driven, disciplinary proceedings would not be instituted against Harrell unless or until a complaint is received regarding a published advertisement." (Doc. # 12 at 2-3).

you deserve" in 2002 and then threatening to discipline him in 2007 for using the very same statement, Harrell fears that the Bar will invalidate other portions of his advertisement campaign and threaten discipline as well.  Harrell cites a number of opinions which document the Bar's practice of disciplining attorneys for running advertisements akin to Harrell's current advertisement campaign.  At this stage in the proceedings, this Court finds that Plaintiff Harrell and his law firm have alleged an injury sufficiently concrete and particularized to meet the requirements of <u>Lujan</u> and other controlling precedent.  Thus, without commenting on the merits of Plaintiffs' claims, this Court finds that Plaintiffs have standing to make such claims.

### Conclusion

In this case, the Court finds that the ends of justice would not be served by utilization of the <u>Pullman</u> doctrine, especially in the "piecemeal" manner requested by Defendants.  This Court's "virtually unflagging obligation" to exercise its jurisdiction counsels against abdication when Fist Amendment freedoms are at stake. <u>Deakins v. Monaghan</u>, 484 U.S. 193, 203 (1988).  Thus, this Court declines to utilize the abstention doctrine and declines to strike Paragraph 35.  Further, this Court finds that Plaintiff Harrell and his firm, Harrell & Harrell have standing to assert the allegations contained in Paragraph 35.  Moreover, this Court

determines that Plaintiff Public Citizen has met the requirements to assert associational standing in this action against Defendants.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Florida Bar Defendants' Motion to Abstain or in the Alternative to Strike (Doc. # 12) is **DENIED.**

(2)  The Florida Bar Defendants' Motion to Dismiss Complaint as to Plaintiff Public Citizen, Inc. (Doc. # 13) is **DENIED.**

(3)  Defendants shall file a response to Plaintiffs' motion for a preliminary injunction (Doc. # 5) within ten (10) days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 29th day of February, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record